F9UVTRUP

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              11 CR 1056 (DLC)

5    ANDRES TRUPPEL,

6              Defendant.                      PLEA

7    ------------------------------x

8                                              New York, N.Y.
                                               September 30, 2015
9                                              11:30 a.m.

10

     Before:
11
                         HON. DENISE COTE,
12
                                               District Judge
13

14                         APPEARANCES

15

     PREET BHARARA,
16        United States Attorney for the
          Southern District of New York
17   NIKETH VELAMOOR
          Assistant United States Attorney
18   TAREK HELOU
          U.S. Department of Justice
19
     ANTHONY M. CAPOZZOLO
20   ARTHUR D. MIDDLEMISS
     CRISTIAN FRANCOS
21        Attorneys for Defendant

22

23   ALSO PRESENT:  HUMBERTO GARCIA, Spanish Interpreter
                     ERICA CUDINA, Pretrial Services
24

25

F9UVTRUP

1          (Case called)

2          THE COURT:  Let me ask you, Mr. Capozzolo, does your

3     client require the services of an interpreter?

4          MR. CAPOZZOLO:  Mr. Truppel is fluent in English.  We

5     have an interpreter on standby in case there is an occasional

6     word or term; our concern was maybe a particular legal term.

7     If he has a question, he'll advise us and we'll ask for an

8     interpretation at this point.  But I think you'll find

9     Mr. Truppel is very fluent.

10          THE COURT:  Okay.  So we have an interpreter.

11          I understand the interpreter is certified to interpret

12     between Spanish and English, and has been placed under oath.

13          Is that correct, Mr. Garcia?

14          THE INTERPRETER:  Yes, your Honor.

15          Humberto Garcia.  I am a staff Spanish interpreter

16     here on standby.

17          THE COURT:  Thank you.

18          I understand this is the defendant's initial

19     appearance in federal court.

20          Mr. Truppel, I'm going to ask you please to stand.  I

21     want to make sure you understand your rights here.

22          You have the right to remain silent.  You are not

23     required to make any statements.  Anything that you do say can

24     be used against you.  Even if you have already made statements

25     to the authorities, you do not need to make any further

F9UVTRUP

1  statements.

2          Do you understand that?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  You have the right to be represented by

5  counsel during this court proceeding, any future court

6  proceedings, and anytime you are questioned by the authorities.

7  If you cannot afford an attorney, I will appoint an attorney to

8  represent you.

9          Do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  You may be seated.

12          I have received a copy of the indictment 11 CR 1056,

13  and an agreement between the government and defense counsel and

14  the defendant.  It is dated September 25.

15          I understand that the defendant will be entering a

16  plea of guilty to Count One of the indictment.

17          Is that correct, Mr. Capozzolo?

18          MR. CAPOZZOLO:  That's correct, your Honor.

19          THE COURT:  Mr. Truppel, please stand again.

20          I'm going to ask you certain questions to establish to

21  my satisfaction that you are pleading guilty because you are

22  guilty, and not for any other reason.  If at any time you do

23  not understand my questions or if you wish for a further

24  opportunity to consult with your lawyer, will you let me know?

25          THE DEFENDANT:  Yes.

F9UVTRUP

| | |
|---|---|
| 1 | THE COURT:  Please place the defendant under oath. |
| 2 | (Defendant sworn) |
| 3 | THE COURT:  You are now under oath.  If you answer any |
| 4 | of my questions falsely, you can be prosecuted for perjury. |
| 5 | Do you understand that? |
| 6 | THE DEFENDANT:  Yes, your Honor. |
| 7 | THE COURT:  What is your full name? |
| 8 | THE DEFENDANT:  Andres Ricardo Truppel. |
| 9 | THE COURT:  Mr. Truppel, how old are you? |
| 10 | THE DEFENDANT:  60 years old. |
| 11 | THE COURT:  How far did you go in school? |
| 12 | THE DEFENDANT:  I completed four year of university, |
| 13 | but without closure; I didn't get a degree. |
| 14 | THE COURT:  Have you ever been treated or hospitalized |
| 15 | for any mental illness? |
| 16 | THE DEFENDANT:  No, your Honor. |
| 17 | THE COURT:  Are you now or have you recently been |
| 18 | under the care of a doctor or psychiatrist? |
| 19 | THE DEFENDANT:  No. |
| 20 | THE COURT:  In the last 24 hours, have you taken any |
| 21 | drugs or medicine or pills or drunk any alcoholic beverages? |
| 22 | THE DEFENDANT:  No. |
| 23 | THE COURT:  Is your mind clear today? |
| 24 | THE DEFENDANT:  Yes. |
| 25 | THE COURT:  Do you understand what's happening here? |

F9UVTRUP

```
 1              THE DEFENDANT:  I understand.

 2              THE COURT:  Do any counsel have doubt as to the

 3    defendant's competence to enter a plea of guilty?

 4              MR. VELAMOOR:  No, your Honor.

 5              MR. CAPOZZOLO:  No, your Honor.

 6              THE COURT:  Based on my observations of the defendant,

 7    his demeanor, and his responses to my questions, I find he is

 8    competent to enter a plea of guilty.

 9              Now, Mr. Truppel, do you have or have you had a

10    sufficient opportunity to discuss with your attorneys your

11    decision to enter a plea of guilty?

12              THE DEFENDANT:  Yes, I do.

13              THE COURT:  Have you had a sufficient opportunity to

14    discuss with them the charge to which you'll be pleading

15    guilty, any defenses that you have to that charge, and the

16    consequences to you of entering a plea of guilty?

17              THE DEFENDANT:  Yes, I do.

18              THE COURT:  Are you satisfied with the representation

19    you've received from your attorneys?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  I'm now going to explain certain

22    constitutional rights that you have.  You'll be giving up these

23    rights if you enter a plea of guilty.

24              Under the Constitution and laws of the United States,

25    you are entitled to a speedy and public trial by a jury on the
```

F9UVTRUP

1    charges contained in the indictment that's been filed against

2    you.

3             Do you understand that?

4             THE DEFENDANT:  Yes.

5             THE COURT:  At that trial, you'd be presumed to be

6    innocent, and the government would be required to prove you

7    guilty by competent evidence and beyond a reasonable doubt

8    before you could be found guilty.  You would not have to prove

9    that you were innocent, and a jury of 12 people would have to

10   agree unanimously that you were guilty.

11            Do you understand that?

12            THE DEFENDANT:  Yes, your Honor.

13            THE COURT:  At that trial and at every stage of your

14   case, you would be entitled to be represented by a lawyer.  If

15   you could not afford one, one would be appointed to represent

16   you.

17            Do you understand that?

18            THE DEFENDANT:  Yes.

19            THE COURT:  During a trial, the witnesses for the

20   government would have to come to court and testify in your

21   presence.  Your lawyer could cross-examine the witnesses for

22   the government, object to evidence offered by the government,

23   and, if you desired, issue subpoenas, offer evidence, and

24   compel witnesses to come to court and testify on your behalf.

25            Do you understand that?

7

F9UVTRUP

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  At a trial, although you'd have the right

3     to testify if you chose to do so, you'd also have the right not

4     to testify.  No inference or suggestion of guilt could be drawn

5     from the fact that you did not testify, if that is what you

6     chose to do.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I understand.

9          THE COURT:  Do you understand that if you were

10    convicted at a trial, you'd have a right to appeal from that

11    verdict?

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Even at this time, right now, even as

15    you're entering this plea, you have the right to change your

16    mind and plead not guilty and go to trial.

17         Do you understand that?

18         THE DEFENDANT:  I understand that.

19         THE COURT:  If you plead guilty and I accept your

20    plea, you're going to give up your right to a trial and all of

21    the other rights I've just described.  There will be no trial.

22    I'll enter a judgment of guilty and sentence you based on this

23    plea after I read whatever submissions I get from you and your

24    lawyer and the government's lawyer, and after I read a

25    presentence report prepared by the probation department.

F9UVTRUP

1          Do you understand that?

2          THE DEFENDANT:  I understand.

3          THE COURT:  If you plead guilty, you're also going to

4     give up your right not to incriminate yourself because I'm

5     going to ask you today what you did, and you're going to have

6     to describe your conduct to me.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I understand.

9          THE COURT:  Let me make sure you understand what

10    you're charged with in Count One.

11         Should I be looking at paragraph 53 and thereafter,

12    Mr. Velamoor?

13         MR. VELAMOOR:  Of the indictment, your Honor, I

14    assume?  Yes.  That's correct.  53 through 58 are the

15    paragraphs containing the charges, and the overt acts begin at

16    59, are at 59.

17         THE COURT:  In terms of the objects of the conspiracy

18    count, is it the government's intention that the defendant

19    allocute to each of the objects?

20         MR. VELAMOOR:  Yes, your Honor.

21         THE COURT:  Okay.

22         Mr. Truppel, you are charged here in Count One with

23    willingly and knowingly participating in a conspiracy.  A

24    "conspiracy" is an agreement by two or more people to violate

25    the law.  It is charged that this conspiracy was in existence

F9UVTRUP

between 1996 and August of 2009; and that at least some of the
acts in furtherance of the conspiracy existed here in the
Southern District of New York, which includes Manhattan and the
Bronx, among other locations.

Do you understand that?

THE DEFENDANT:  I understand.

THE COURT:  There are several objects of the
conspiracy that are charged in Count One, and I'm going to
describe those to you separately.

One object is that the conspirators, being officers,
directors, employees, or agents of an issuer of securities
registered under American law, specifically, the Securities and
Exchange Act of 1934, willfully and with intent to further the
objects of the conspiracy, used mails and other
instrumentalities of interstate commerce corruptly in
furtherance of an offer or payment or authorization of a
payment to a foreign official, knowing that all or a portion of
this thing of value being offered or given directly or
indirectly to the foreign official or a candidate for foreign
political office was for the purpose of -- and there are
several alternative purposes; that this was for the purpose of
influencing the acts or decisions of the foreign official in
that person's official capacity or inducing the foreign
official to do, or omit to do acts in violation of that
official's lawful duty, or for the purpose of securing an

F9UVTRUP

1    improper advantage, or for inducing the foreign official to use

2    that official's influence with a foreign government or agencies

3    to affect or influence the decisions of that government or

4    agency in order to assist you and your co-conspirators in

5    obtaining or retaining business for or with or directing

6    business to a company known as Siemens, all in violation of the

7    law.

8            Do you understand that as one of the objects of this

9    conspiracy?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  Let me describe another object of this

12   conspiracy.

13           It was an object of the conspiracy that the

14   conspirators, including you, while in the territory of the

15   United States, willfully and with intent to further the objects

16   of the conspiracy, corruptly did use the mails or, again,

17   instrumentalities of interstate commerce --

18           MR. VELAMOOR:  Your Honor, just so our indictment is

19   clear, the only difference between the first and second objects

20   is the jurisdictional basis, the first one being the fact of an

21   issuer that issues stock in the U.S. under the SEC law, as the

22   Court pointed out; the second one being that someone, any

23   individual, while in the United States committing such an act

24   in furtherance.

25           THE COURT:  Thank you, Mr. Velamoor.

F9UVTRUP

1           So the second object of the conspiracy involves the

2     same improper conduct; but, as Mr. Velamoor just indicated,

3     instead of it being in connection with an issuer registered

4     pursuant to the Securities and Exchange Act, the link to the

5     United States is that the conspirators, while in a territory of

6     the United States, did the acts with the intention of

7     furthering the conspiracy.

8           Do you understand that as a second object of the

9     conspiracy?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Let's go to the third object of the

12    conspiracy.

13          It is that the conspirators would and did knowingly

14    and willfully, directly or indirectly, falsify or cause to be

15    falsified books and records that were required to accurately

16    and fairly reflect the assets of Siemens and the transactions

17    and dispositions of those assets; Siemens, again, being an

18    issuer of securities under American law.

19          Do you understand that is another object of this

20    conspiracy?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Another object of the conspiracy is that

23    the conspirators knowingly and willfully circumvented the

24    system of internal accounting controls in connection with

25    Siemens again; that those controls were intended to be

F9UVTRUP

1    sufficient to provide reasonable assurance that the

2    transactions regarding Siemens were reported as necessary to

3    permit preparation of financial statements that would be in

4    conformity with generally-accepted accounting principles; and,

5    again, Siemens being an issuer under American securities law.

6           Do you understand that is another object of the

7    conspiracy?

8           THE DEFENDANT:  Yes, I understand.

9           THE COURT:  The final object of the conspiracy is

10   known as wire fraud; and that it is an object that the

11   conspirators would devise a scheme or artifice to defraud or to

12   obtain money by false or fraudulent representations; and, in

13   the course of doing so, would willfully and knowingly transmit

14   or cause to be transmitted by wire communication and interstate

15   or foreign commerce writings or signals for the purpose of

16   executing the scheme to defraud.

17          Do you understand that is a final object of the

18   conspiracy?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  Let me give you an example of something

21   you are charged with having done to help make this conspiracy

22   succeed.  I'm just going to look at one overt act.

23          I'll choose overt act F on page 38, counsel.

24          It is charged that on October 15th, 1999, in Argentina

25   and Germany, you and others caused SBS to wire transfer

F9UVTRUP

1    approximately $3.9 million to a bank account held in Manhattan.

2              Do you understand that's charged as something you did

3    to help make the conspiracy succeed?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Let me make sure you understand the

6    penalties that apply to the crime charged in Count One.

7              This crime carries a maximum term of imprisonment of

8    five years, a maximum term of supervised release of three

9    years, a maximum fine of $250,000 or twice the gross gain or

10   loss, a requirement to pay a special assessment of $100, and

11   potentially an obligation to make restitution.  I won't decide

12   ultimately whether restitution is required until the sentencing

13   proceeding here.

14             Do you understand what I've just described?

15             THE DEFENDANT:  Yes, I understand, your Honor.

16             THE COURT:  There may also be a duty to make

17   forfeiture.

18             Do you understand that?

19             MR. CAPOZZOLO:  Excuse me.

20             (Pause)

21             THE DEFENDANT:  Yes, I understand.

22             THE COURT:  Now, "supervised release" means that you

23   will be subject to monitoring following release from prison.

24   There are terms of supervised release with which you must

25   comply.  If you do not comply with them, you can be returned to

F9UVTRUP

1    prison without a jury trial.  You'd be given no credit for any

2    time you already spent in prison, and no credit for any time

3    you spent on post-release supervision.

4              Do you understand that?

5              THE DEFENDANT:  I understand.

6              THE COURT:  Are you a citizen of this country?

7              THE DEFENDANT:  No, your Honor.

8              THE COURT:  You understand that a conviction for this

9    crime as charged in Count One could have a very negative impact

10   on your immigration status and might require your removal from

11   this country?

12             Do you understand that?

13             THE DEFENDANT:  Yes, I understand.

14             THE COURT:  Have you discussed the immigration

15   consequences with your lawyers?

16             THE DEFENDANT:  Yes, I did.

17             THE COURT:  Do you understand that if your attorney or

18   anyone else has attempted to predict to you what your sentence

19   will be, that their prediction could be wrong?

20             Do you understand that?

21             THE DEFENDANT:  Yes, I understand.

22             THE COURT:  No one, not your lawyers, not the

23   government's lawyer, no one can give you any assurance of what

24   your sentence will be, because I'm going to decide your

25   sentence, but I'm not going to do it now.  I'm going to wait.

F9UVTRUP

1    I'm going to wait till I get a presentence report prepared by

2    the probation department, do my independent analysis of your

3    sentencing guideline range, decide whether I should depart up

4    or down from that range, look at all the other information

5    presented to me in connection with the sentence, consider the

6    factors set forth in a section of the law we call Section

7    3553(a), and only then, after that whole process, will I decide

8    what a reasonable sentence is for you.

9            Do you understand that?

10           THE DEFENDANT:  I understand.

11           THE COURT:  Even if your sentence is different from

12   what your attorney or anyone else has told you it might be,

13   you're still going to be bound by your plea of guilty and

14   cannot withdraw your plea of guilty.

15           Do you understand that?

16           THE DEFENDANT:  Yes, I do.

17           THE COURT:  Has anyone threatened you or anyone else

18   or forced you in any way to plead guilty?

19           THE DEFENDANT:  No, your Honor.

20           THE COURT:  Now, I understand there is a plea

21   agreement between you and the government; is that right?

22           THE DEFENDANT:  That's correct.

23           THE COURT:  Excuse me one second.

24           (Pause)

25           THE COURT:  Mr. Truppel, why don't you be seated for a

F9UVTRUP

```
 1   minute.

 2           THE DEFENDANT:  Thank you.

 3           (Pause)

 4           THE COURT:  Counsel, do you want to proceed with the

 5   plea?

 6           (Pause)

 7           THE COURT:  Mr. Truppel, please stand again.

 8           I want to make sure we are looking at the same

 9   document.

10           Do you have a document before you that bears the date

11   September 25 on the first page?

12           THE DEFENDANT:  Yes.

13           THE COURT:  Does that document have five pages in all?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Is your signature on the last page?

16           THE DEFENDANT:  Yes.

17           THE COURT:  What's the date next to your signature?

18           THE DEFENDANT:  9/30/15.

19           THE COURT:  That's today.

20           Did you sign this today?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Before you signed this document, did you

23   read it?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Before you signed this document, did you
```

F9UVTRUP

1    discuss it with your lawyer?

2             THE DEFENDANT:  Yes.

3             THE COURT:  When you signed this document, did you

4    believe you had a good understanding of its terms?

5             THE DEFENDANT:  I did, yes.

6             THE COURT:  Now, did anyone force you to sign this

7    document?

8             THE DEFENDANT:  No, your Honor.

9             THE COURT:  In this document, you're offering certain

10   cooperation to the government; is that correct?

11            THE DEFENDANT:  That's correct.

12            THE COURT:  Do you understand that it is up to the

13   government -- and the government alone -- to decide at the time

14   of sentence whether or not to write a letter to me that will

15   describe any assistance you've given to the government?

16            THE DEFENDANT:  Yes, I understand.

17            THE COURT:  Do you understand that if the government

18   writes that letter, it is still up to me -- and me alone -- to

19   decide whether or not to give you any credit at the time of

20   sentence for any information that you have provided to the

21   government?

22            Do you understand that?

23            THE DEFENDANT:  Yes, I do.

24            THE COURT:  Do you have any other agreement with the

25   government about your plea or about your sentence that has been

F9UVTRUP

1   left out of this September 25th document?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Please tell me in your own words what you

4   did that makes you believe you're guilty of the crime with

5   which you are charged.

6              MR. CAPOZZOLO:  Judge, just for the record,

7   Mr. Truppel and I have worked extensively to develop an

8   allocution for you.  Mr. Truppel's English is a second

9   language.  He is fluent.  But to assist, and because this is a

10  somewhat complicated white-collar matter, we prepared a written

11  allocution that he is going to read, but he's also willing to

12  answer any questions the Court might have.

13             THE COURT:  Okay.

14             Mr. Truppel, feel free to read to me what has been

15  prepared, but I want to make sure that everything you read to

16  me is something that you believe is truthful and honest.

17             THE DEFENDANT:  Yes.  I understand.

18             THE COURT:  Okay.  Good.

19             Read slowly and keep your voice up.

20             THE DEFENDANT:  Okay.  So I work for Siemens from

21  about 1977 to about 2002.  And from 2002 to 2004 I was an

22  unpaid consultant to Siemens AG.  From 1996 to 2002, I was

23  chief financial officer of Siemens Argentina.

24             Siemens Argentina was a subsidiary of Siemens AG,

25  which was an issuer of stock on the New York Stock Exchange.

F9UVTRUP

1            From 1996 until 2006, I, along with other officers of

2      Siemens, including my codefendants, agree and conspire to

3      obtain for Siemens the proceed from a government contract for a

4      National Identity Card project in Argentina, which is referred

5      as to the DNI project in the indictment in this matter.

6            I understood and agreed that such conspiracy would

7      seek to obtain the proceeds of the DNI project by means of

8      bribery and fraud, including the bribery of Argentine

9      government officials.  The project was worth more than one

10     billion to Siemens, and Siemens paid tens of millions in

11     bribes.

12           Even after the DNI project was terminated, I and other

13     members of the conspiracy continued to pursue the proceeds of

14     the DNI project through additional bribes and fraudulent

15     conduct.  We took a variety of steps to conceal the bribe

16     payments we were making.  For example, I and others used

17     entities referred to as the intermediary defendants in the

18     indictment to make bribe payments to officials that were

19     designed to appear falsely as payments to consultants, even

20     though no such consultant service were actually provided.

21           We also caused various international wire transfer to

22     be done to transmit bribe payments.  The transfers include

23     approximately 7.4 million from Germany to the bank account in

24     Manhattan, New York.  These payments were structured as

25     payments to settle a foreign exchange hedging contract with the

F9UVTRUP

foreign currency company organized under the laws of Bahamas,

but in reality, the hedging --

THE COURT:  But in reality --

THE DEFENDANT:  In reality, the hedging contract was

meant to conceal bribes to Argentine officials.

Also, during 1998 and '99, and as part of the

conspiracy, I and others caused Siemens to make millions of

dollars of payments through entities referred to as the conduit

entities, which were, in fact, intended to be bribe payments to

several Argentine officials and to otherwise facilitate the

conspiracy.

During and as part of the conspiracy, I and others use

the $27 million contract between Siemens entity and the Mfast

Consulting AG for consulting services that was, in fact, a way

to conceal bribe payments to government officials.  This

contract is referred to as "the White Contract" in the

indictment.

THE COURT:  As the white?

THE DEFENDANT:  White contract.

During and as part of the conspiracy, I and others

caused Siemens to pay nearly $1 million in bribes to the

Argentine attorney and former Ministry of Justice official, who

was referred to as close friend of Argentine Official H in the

indictment.

This bribe payments were concealed through false

F9UVTRUP

1    records and the books and records of Siemens AG.  I know that

2    such conduct circumvented the accounting controls using methods

3    that included false invoices and payments to consultants that

4    were false in that no consultant services were provided.

5           During the relevant time period of the conspiracy, I

6    prepared affidavit that I knew Siemens AG make use of legal

7    proceedings to seek to obtain the proceeds of the DNI project.

8    The affidavit was false in that I omitted the existence of the

9    bribe payments to Argentine officials related to the DNI

10   project.  I later learned that Siemens AG submitted this

11   affidavit in an arbitration proceeding in Washington, D.C. to

12   recover lost profits from the DNI projects from the Argentinian

13   government.

14          I knew that this conduct was wrong and illegal, and I

15   regret this conduct.

16          THE COURT:  Counsel, let's talk about the statute of

17   limitations issues here.

18          MR. CAPOZZOLO:  Yes, Judge.

19          Our legal team has reviewed the statute of limitations

20   defense in this case.  We do not believe that we have a statute

21   of limitations defense in this matter due to other acts of

22   members of the conspiracy that extended the conspiracy to, I

23   believe, as late as 2009.  The indictment was brought in 2011.

24          THE COURT:  Mr. Velamoor.

25          MR. VELAMOOR:  Yes, your Honor.

F9UVTRUP

1          We also believe that there is no statute of

2    limitations defense here.

3          THE COURT:  I note that the last overt act listed in

4    Count One, which is on page 47, is an act from November of

5    2007, which would bring it within the five-year statute of

6    limitations period.

7          Is that correct, Mr. Velamoor?

8          MR. VELAMOOR:  I believe that's correct, your Honor,

9    yes.

10         THE COURT:  Let me go through the individual goals of

11   the conspiracy as charged in Count One.

12         As I understand it, Mr. Truppel, you've indicated that

13   Siemens AG is an issuer of securities registered on the New

14   York Stock Exchange; is that right?

15         THE DEFENDANT:  Yes, that's correct.

16         THE COURT:  You were, at least during part of the

17   period of time that you've described here, CFO of a subsidiary

18   of Siemens AG?

19         THE DEFENDANT:  That's correct.

20         THE COURT:  And associated with an Argentinian

21   subsidiary; is that right?

22         THE DEFENDANT:  Yes, that's correct.

23         THE COURT:  You understood that bribes were paid to a

24   foreign official in Argentina in connection with Siemens'

25   desire to obtain the DNI project?

F9UVTRUP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Give me an example of something you

3    personally did to help that succeed.

4          THE DEFENDANT:  I helped to get invoices from

5    contractors that were services that was not really true.

6          THE COURT:  So false invoices were prepared under your

7    supervision in connection with that scheme?

8          THE DEFENDANT:  Yes.

9          THE COURT:  I think the next series of objects has to

10   do with -- that wouldn't be covered by the statements you've

11   just made to me, would be those that have to do with the books

12   and records of Siemens.

13          Give me an example of the kind of line item in the

14   books and records of Siemens that was falsified based on the

15   schemes that you've just described to me this morning.

16          THE DEFENDANT:  The book records that were falsified

17   were in Germany, Siemens AG.  So I was not directly responsible

18   for the book records in Germany.  But I knew that the invoices,

19   for example, that I was sending will be booked as -- through

20   invoice in the books from Siemens AG.

21          THE COURT:  Okay.  As a result, because they would be

22   relied upon for their face value, false information would be

23   placed on the books and records of the parent company?

24          THE DEFENDANT:  That's correct.

25          THE COURT:  In what way would that circumvent the

F9UVTRUP

1    internal accounting controls?

2              THE DEFENDANT:  I mean --

3              MR. CAPOZZOLO:  Can I speak to Mr. Truppel?

4              THE DEFENDANT:  Can I ask a question?

5              THE COURT:  Yes, you may consult with your attorney.

6              (Pause)

7              MR. CAPOZZOLO:  Thank you, your Honor.

8              THE DEFENDANT:  So I understood that after the Siemens

9    AG was -- was listed in New York, the expenses that until that

10   time were accepted in Germany were not longer accepted after --

11   after Siemens was listed in New York.  So I knew that -- that

12   this invoices, before the listing, I just would write

13   consultant and make a note, a German note, stating that this

14   was payment for an official.  After the company was listed in

15   New York, this was not longer allowed in Siemens, and so that's

16   the reason that I had to prepare an invoice or get an invoice

17   from a contractor.  And I knew this was the only objective of

18   that invoice, was to -- to complain with the internal

19   accounting in Germany.

20             THE COURT:  To comply?

21             THE DEFENDANT:  To comply, sorry, to comply with

22   internal accounting in Germany, yes.

23             THE COURT:  Turning to the last object of the

24   conspiracy, which has the wire fraud element to it, I believe

25   you indicated that you understood that there were wire

F9UVTRUP

1   transmissions that, in fact, went into New York; is that right?

2          THE DEFENDANT:  That's correct.

3          THE COURT:  Including wire transfers of significant

4   sums of money; is that correct?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  At the time that you were doing the acts

7   that you've described to me, you knew you were violating the

8   law?

9          THE DEFENDANT:  Yes, I knew that.

10          THE COURT:  You knew you were doing something wrong?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Does the government agree there's a

13   sufficient factual predicate for a plea of guilty?

14          MR. VELAMOOR:  Yes, your Honor.

15          THE COURT:  Does defense counsel agree?

16          MR. CAPOZZOLO:  Yes, Judge.

17          THE COURT:  Mr. Capozzolo, do you know of any reason I

18   should not accept this plea?

19          MR. CAPOZZOLO:  I do not.

20          THE COURT:  Mr. Truppel, since you acknowledge that

21   you are, in fact, guilty as charged in Count One, since I am

22   satisfied that you know of your rights, including your right to

23   go to trial and that you're aware of the consequences of your

24   plea, including the sentence that may be imposed, and since I

25   find that you're voluntarily pleading guilty, I accept your

F9UVTRUP

1      plea and enter a judgment of guilty on Count One.

2              Now, at some point here the probation department is

3      going to want to interview you.  If you speak with them, make

4      sure anything you say is truthful and accurate.  They prepare a

5      report, and that report is important to me in deciding what

6      sentence to impose.  You read it, too, carefully, before

7      sentence.  If you see any errors in it, point them out to your

8      attorney.

9              Will you do that?

10             THE DEFENDANT:  Yes, yes, your Honor.

11             THE COURT:  You may be seated.

12             THE DEFENDANT:  Thank you.

13             THE COURT:  Counsel, should I be scheduling sentence

14     at this point?

15             MR. VELAMOOR:  Your Honor, perhaps we can set a date

16     to come back to the Court with an update perhaps in four

17     months.

18             THE COURT:  I'll take a status letter with respect to

19     whether or not the case is ready for the scheduling of sentence

20     on January 29th.

21             Let's talk about terms of bail.

22             As I understand it, the parties have agreed to a

23     300,000 personal recognizance bond secured by the defendant's

24     retirement account in the possession of Citigroup, regular

25     pretrial services supervision, and no travel restrictions.

F9UVTRUP

```
 1              Is that correct?
 2              MR. VELAMOOR:  Yes, your Honor, that's correct.
 3              I'm sorry.  I believe the reporting would not be
 4     regular; it would be Internet reporting.  I just spoke to the
 5     pretrial services officer.  It is termed as Internet reporting
 6     in their logs.
 7              MR. CAPOZZOLO:  We concur, Judge.
 8              THE COURT:  Thank you.
 9              Mr. Velamoor, is there anything else we need to do?
10              MR. VELAMOOR:  May I have one moment, your Honor.
11              (Pause)
12              MR. CAPOZZOLO:  Without objection from the government,
13     we would request that the transcript of the defendant's plea
14     today be sealed.
15              MR. VELAMOOR:  Your Honor, we wouldn't object to the
16     sealing of the transcript.  Obviously we understand that the
17     fact of the plea is likely to be publicly docketed by your
18     Honor's deputy, but we wouldn't object to the sealing of the
19     transcript.
20              THE COURT:  Okay.  Well, we have a number of visitors
21     in the courtroom, including members of the press.  I'm not
22     quite sure what the purpose of a sealed transcript is or the
23     justification for it.
24              MR. VELAMOOR:  Your Honor, we do understand that the
25     members of the press are here.  I understand it would not be as
```

F9UVTRUP

1    effective as it might be in a case where there weren't these

2    people in the courtroom.

3            On the other hand, there is additional detail in the

4    transcript that would become available to people who are not

5    necessarily here if the transcript were to be sealed.

6            THE COURT:  Okay.  I'm going to deny the application.

7            Anything else, counsel?

8            MR. CAPOZZOLO:  No, your Honor.

9            THE COURT:  Thank you so much.

10                           *    *    *